[Civ. No. 5914. Fourth Dist. Oct. 26, 1960.]

IRENE AUBIN et al., Appellants, v. KAISER STEEL CORPORATION (a Corporation) et al., Respondents.

Slaughter, Schlesinger & Schlecht and Shaw & Barnett for Appellants.

Thompson & Colegate, Thomas E. Ryan and Robert D. Allen for Respondents.

GRIFFIN, P. J.—Plaintiffs-appellants appeal from a judgment for defendants-respondents after trial of special defense by a judge sitting without a jury. Plaintiffs are the widow and children of Maurice Aubin, deceased, and commenced this wrongful death action after he was killed in an automobile-train collision at a road-railroad intersection on January 20,

1956. Defendant Robert Franklin Kipp was dismissed as a defendant from the action at the pretrial hearing. Aubin was employed at Kaiser Steel Corporation's Eagle Mountain Mine and the collision occurred on company property; the train and tracks were also owned by Kaiser. The main issue on the appeal is whether Aubin was acting within the scope of his employment at the time of the accident so as to vest exclusive jurisdiction in the Industrial Accident Commission. The trial court's decision on this issue was based upon the "bunkhouse rule."

Aubin was employed by Kaiser at the Eagle Mountain Mine from February 1953 until his death. The mine is located in the desert area of Riverside County, 14 to 17 miles from Desert Center, a community of about 150 people. The nearest cities are Blythe and Indio, each approximately 60 miles from the mine. At the mine Kaiser had constructed homes for employees and their families, and dormitories with individual rooms for male employees. A charge of 35 cents per night was made for the rooms. Meals were served in a company mess hall for a charge of $1.75 per day. A swimming pool, tennis courts, movies, baseball diamond and other recreational facilities were supplied by the company. From 1953 until 1955, Aubin had lived at the mine with his family. Then his family moved to Banning to escape the desert heat. Thereafter, Aubin lived in a dormitory during the week and usually went home to Banning on week ends.

Most employees lived at the mine, but some lived in Desert Center. Employees were not necessarily required by Kaiser to live at the mine. The dormitory facilities furnished and meals served by Kaiser were sold at less than cost.

Aubin was asked to work over the week end following January 20, 1956, which was a Friday. After completing his regular working hours he went to the dormitory and later had dinner in the mess hall. About 9:30 p.m. Aubin and Kipp (owner and driver of the car involved in the collision) decided to go to the Ocotillo Gardens, a restaurant and beer parlor located near Desert Center. When they were about 1½ miles from the mine, but still on Kaiser's property, the car collided with Kaiser's train. The proposed trip was for recreational purposes and did not involve any particular mission for their employer.

Plaintiffs filed with the Industrial Accident Commission an application for death benefits, alleging that Aubin was acting within the scope of his employment when he met his death.

This was proper in case of doubt. (*Freire* v. *Matson Navigation Co.*, 19 Cal.2d 8, 10 [118 P.2d 809].)

The "bunkhouse rule" has been defined as follows in 99 Corpus Juris Secundum, Workmen's Compensation, section 230 (b), at page 782: "When the contract of employment contemplates that the employee shall sleep, or have his meals, or do both on the premises of the employer, the employee is considered to be performing services growing out of, and incidental to, or in the course of, such employment during the time he is on the premises of the employer for such purposes before or after the regular working hours."

 The rule in California, as established by the several authorities hereinafter cited and collected in Hanna, the Law of Employee Injuries and Workmen's Compensation, volume 2, pages 166-167, is as follows: "Where the employment contract contemplates, or the work necessity requires that the employee live or board on the employer's premises, the employee is considered to be performing services incidental to such employment during the time he is on such premises."

If, under such circumstances, he is injured or killed while making a reasonable use of the premises, even in his leisure time, he is considered to be acting within the course of his employment, and his injury or death is compensable under the Workmen's Compensation Act. (See *Fidelity & Casualty Co.* v. *Industrial Acc. Com.*, 176 Cal.App.2d 541 [1 Cal.Rptr. 567].) One of the theories underlying this popularly termed "bunkhouse rule" is that an injury or death suffered by an employee during his reasonable use of the premises, although occurring during nonworking hours, is within the course of his employment because he is thereby earning and collecting a part of his wages. (See cases collected in Hanna, The Law of Employee Injuries and Workmen's Compensation, vol. 2, pp. 166-167, *supra.*)

Plaintiffs contend that Aubin's actions at the time of his death were purely personal and not for the mutual convenience of himself and his employer. Defendants cite several cases in which an employee "living in" was held to be acting within the scope of employment when injured even though engaged in performing a personal act at that time. Thus, in the recent case of *Reinert* v. *Industrial Acc. Com.*, 46 Cal.2d 349 [294 P.2d 713], an employee was held to be injured in the course of employment notwithstanding the fact that the accident occurred while she was riding for her own recreation and it occurred at a location off the premises of her employer. See

also *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal. App.2d 567 [99 P.2d 1089] (cook injured while dressing or adjusting dress); *West* v. *Industrial Acc. Com.*, 79 Cal.App. 2d 711 [180 P.2d 972] (nurse injured while resting in swing.)

Plaintiffs contend that the "bunkhouse rule" is not applicable to this case because (1) the rule is limited to injuries sustained while using the living area and recreational facilities furnished by the employer, i.e., the bunkhouse; (2) the terms of Aubin's employment did not *require* that he live at the mine, or *contemplate* that he live or board at the mine; and (3) the testimony indicates that Aubin paid full value for the board and room furnished him at the mine.

Defendants reply to these contentions by citing *Truck Ins. Exchange* v. *Industrial Acc. Com.*, 27 Cal.2d 813 [167 P.2d 705], where an employee was killed in an automobile accident upon a public road after his day's work as a ranch hand had been completed and *State Comp. Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28 [227 P. 168], where a hotel maid was injured on a public sidewalk outside her employer's premises as she left those premises on a personal errand on her day off. They also contend that, even admitting that Aubin was not necessarily *required* to live at the mine, the geographic circumstances of his employment were such that it was reasonably contemplated that he would live at the mine. During the time Aubin was employed at the mine, 200 to 300 men were employed there. Kaiser had made extensive improvements to house these men at the mine and rented them at a loss. Clearly, it was not contemplated that the tiny community of Desert Center would house all these men. In *Union Oil Co.* v. *Industrial Acc. Com.*, 211 Cal. 398, at page 403 [295 P. 513], the court said:

"It is well settled that if an employee is required to live or board on the premises of his employer, either by the terms of his contract of employment *or the necessities of the work*, an injury received while on the premises may be compensable, though the employee is not at work at the time of the injury." (Italics ours.)

Here, there were no adequate housing facilities within a reasonable distance. Aubin's family went to Banning to locate a home after terminating their stay at the mine. We conclude that the "bunkhouse rule" is applicable even though Aubin was required to make payment for the board and room supplied to him by defendant at a reduced rate lacking in profit. (*Schlosser* v. *Pacific Lumber Co.*, 15 I.A.C. 38; *Vos-*

*burgh* v. *Industrial Acc. Com.,* 11 Cal. Comp. Cases 201; *Madin* v. *Industrial Acc. Com.,* 46 Cal.2d 90 [292 P.2d 892]; *Jiminez* v. *Liberty Farms Co.,* 78 Cal.App.2d 458 [177 P.2d 785]; *State Comp. Ins. Fund* v. *Industrial Com.,* 98 Colo. 563 [58 P.2d 759].)

Plaintiffs contend (1) that the "bunkhouse rule" is based on a fiction; (2) that application of the "bunkhouse rule" to the facts of the instant case would eliminate the requirement of proximate causation between employment and injury; and (3) that Kaiser did not intend that the Eagle Mine employees be covered by the "bunkhouse rule." The first and third arguments are lacking in merit.

Under facts somewhat similar to those here, an employee's injury was held to have been sustained in the course of employment in the case of *Freire* v. *Matson Navigation Co., supra,* 19 Cal.2d 8 [118 P.2d 809]. A janitor, required to live on a steamship except when moored, but who regularly reported for work during the time he was ashore, was on a public pier next to his employer's ship while arriving at work in a taxicab when a vehicle owned by the employer crushed his foot. The fact that the danger was one to which the public was also exposed did not preclude a causal connection between employment and injury if the employment subjected the employee to the danger in a peculiar fashion or to an abnormal degree. See also *State Comp. Ins. Fund* v. *Industrial Com., supra,* 98 Colo. 563 [58 P.2d 759] and *Truck Ins. Exchange* v. *Industrial Acc. Com., supra,* 27 Cal.2d 813 [167 P.2d 705]. ▮ In the instant case, it appears that the Kaiser Mine road being traveled by the automobile in which Aubin was riding when killed was the only means of access to Aubin's employment. This private road crossed Kaiser's railroad which was being used by Kaiser's train when the collision occurred. It appears that Aubin's use of the road and exposure to danger of an automobile-train collision at this place was peculiar to his employment and increased thereby.

We conclude that plaintiff's sole remedy is under the Workmen's Compensation Act. Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 21, 1960.